IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| ELIZABETH C. H.,[1] | Case No. 2:22-cv-00472-JR |
|     Plaintiff, | OPINION AND ORDER |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
|     Defendant. | |

RUSSO, Magistrate Judge:

    Plaintiff Elizabeth H. brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Title II Disability Insurance Benefits under the Social Security Act. All parties have consented to allow a Magistrate Judge enter final orders and judgement in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). For the reasons set forth below, the Commissioner's decision is reversed, and this case is remanded for the immediate payment of benefits.

---

[1] In the interest of privacy, this opinion uses only the first name and initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Page 1 – OPINION AND ORDER

## BACKGROUND[2]

Born in July 1970, plaintiff alleges disability beginning August 22, 2013, due to degenerative disc disease, carpal tunnel, and "bad knees." Tr. 168, 187, 1253. Her application was denied initially and upon reconsideration. On July 1, 2016, a hearing was held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 35-77. On August 26, 2016, the ALJ issued a decision finding plaintiff not disabled. Tr. 21-30.

Plaintiff timely filed an appeal, and, on June 19, 2019, District Judge McShane reversed the ALJ's decision and remanded the case for further proceedings. Tr. 1313. In particular, Judge McShane adopted Magistrate Judge Clarke's opinion, which found that the ALJ erred in assessing plaintiff's subjective symptom testimony, as well as the medical opinions of state agency consulting source Richard Alley, M.D.,[3] and longstanding treating neurologist Rodrigo Lim, M.D., and his nurse practitioner associate, Shayne Yocum. Tr. 1314-1330. Judge Clarke nonetheless determined the record was ambiguous in light of conflicts between the medical opinions and new

---

[2] The record before the Court constitutes more than 3600 pages, but with multiple incidences of duplication. Where evidence occurs in the record more than once, the Court will generally cite to the transcript pages on which that information first appears in its entirety.

[3] There are four state agency consulting source opinions in this case (although two are from the same doctor). In February 2014, Dr. Alley limited plaintiff to occasional handling, fingering, and feeling on her left side – including "pinching, picking, typing, and writing, holding, turning, grasping, and seizing" – due to carpal tunnel. Tr. 85-86. In July 2014, Susan Moner, M.D., reviewed the record upon plaintiff's request for reconsideration and noted that plaintiff's carpal tunnel release surgery had "good results." Tr. 99. However, due to plaintiff's "trigger finger" diagnosis, Dr. Moner limited plaintiff, in relevant part, to occasional "fingering of all types" on her right side. Tr. 98. In October 2018, M. Fountain, M.D., endorsed occasional bilateral overhead reaching limitations, but placed no restriction of plaintiff's ability to handle, finger, or feel. Tr. 1354-55. Dr. Moner affirmed Dr. Fountain's findings in June 2019. Tr. 1370-71. Plaintiff had right-sided carpal tunnel and trigger finger release surgery in November 2013 – i.e., prior to both the state agency consulting source opinions. Tr. 323-24, 344. Her left-sided carpal tunnel and trigger finger release surgery occurred in February 2014. Tr. 326, 334.

Page 2 – OPINION AND ORDER

evidence surrounding plaintiff's 2016 fibromyalgia diagnosis. Tr. 1331-37; *see also* Tr. 1341-42 (Appeals Council remand order).

In August and December 2021, a second and third ALJ hearing were held, wherein a VE and medical expert ("ME") Robert Smiley, M.D. – a vascular surgeon – testified. Tr. 1224-79. On December 21, 2021, the ALJ issued a second decision finding plaintiff not disabled. Tr. 1201-13.

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process, the ALJ found plaintiff had not engaged in substantial gainful activity from the alleged onset date "through her date last insured of December 31, 2017." Tr. 1204. At step two, the ALJ determined the following impairments were medically determinable and severe: "lumbar and cervical spine degenerative disk disease; fibromyalgia; bilateral carpal tunnel syndrome status post releases; bilateral knee osteoarthritis; asthma; and obesity." *Id.* At step three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 1205.

Because she did not establish presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected her ability to work. The ALJ resolved that plaintiff had the residual function capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) except:

> she can never crawl or climb ladders, ropes, or scaffolds; occasionally balance, stoop, and kneel; less than occasionally (5% or less of the workday) crouch or climb stairs; frequently handle and finger objects bilaterally; avoid extreme temperatures, excessive vibration, pulmonary irritants such as fumes, dust, smoke in excess of an office setting, and hazards such as dangerous moving machinery and unprotected heights.

Tr. 1207.

At step four, the ALJ determined plaintiff could not perform any past relevant work. Tr. 1212. At step five, the ALJ concluded that there were a significant number of jobs in the national

Page 3 – OPINION AND ORDER

economy that plaintiff could perform despite her impairments, such as document preparer. Tr. 1213.

## DISCUSSION

Plaintiff argues the ALJ erred by: (1) failing to properly analyze her migraine headaches under SSR 19-4p at steps two and three; (2) discrediting her subjective symptom testimony and the lay witness statements; (3) identifying an insignificant number of jobs at step five; and (4) improperly assessing the medical opinions of Dr. Lim, Dr. Alley, Dr. Smiley, and Mr. Yocum. Concerning the latter, plaintiff asserts the ALJ erroneously "preferred" the opinion of non-examining Dr. Smiley over those of her treating sources – i.e., Dr. Lim and Mr. Yocum[4] – and completely "ignore[ed]" the handling/fingering/feeling limitations articulated by Dr. Alley. Pl.'s Opening Br. 23-25 (doc. 15).

The Commissioner concedes harmful legal error as to "[p]laintiff's testimony and the medical opinions," such that the sole issue on review is the appropriate legal remedy. Def.'s Resp. Br. 1-2 (doc. 21). Plaintiff contends "the limitations opined by Dr. Lim, FNP Yocum, or the left hand restrictions opined by Dr. Alley, and/or [her] subjective symptom report" should be credited as true, pursuant to which an award of benefits is warranted. Pl.'s Opening Br. 35 (doc. 15).

---

[4] At the time of plaintiff's application, there were three types of acceptable medical opinions in Social Security cases: those from treating, examining, and non-examining doctors. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). In general, the opinions of treating doctors were accorded greater weight than those of examining doctors, and the opinions of examining doctors were entitled to greater weight than those of a non-examining doctors. *Id.* Further, contradiction between a treating doctor's and another doctor's opinion did not warrant immediate rejection; rather, it simply meant that a lesser standard – i.e., "specific and legitimate" as opposed to "clear and convincing" – applied to the treating doctor's opinion. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted). The revised regulations have since done away with this medical hierarchy. *Woods v. Kijakazi*, 32 F.4th 785, 787-92 (9th Cir. 2022).

Page 4 – OPINION AND ORDER

Conversely, the Commissioner asserts further proceedings are warranted because the medical record is ambiguous.

The decision whether to remand for further proceedings or for the immediate payment of benefits lies within the discretion of the court. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101-02 (9th Cir. 2014). Nevertheless, a remand for an award of benefits is generally appropriate when: (1) the ALJ failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed, there are no outstanding issues that must be resolved, and further administrative proceedings would not be useful; and (3) after crediting the relevant evidence, "the record, taken as a whole, leaves not the slightest uncertainty" concerning disability. *Id.* at 1100-01 (citations omitted); *see also Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015) (summarizing the standard for determining the proper remedy).

Upon review of the record, the Court finds that remand for the immediate payment of benefits is proper. Initially, as noted above, it is undisputed the ALJ neglected to provide legally sufficient reasons, supported by substantial evidence, for affording less weight to plaintiff's subjective symptoms statements and the medical opinions of Drs. Lim and Alley, and Mr. Yocum.

Second, the record has been fully developed and there are no outstanding issues, such that further proceedings would not be useful. The ALJ has already had two opportunities to assess plaintiff's testimony and the medical opinion evidence, and failed to do so appropriately (i.e., essentially duplicating the same errors despite Judge Clarke's clear decision and consultation with an ME). *Compare* Tr. 21-30 (first ALJ decision), *with* Tr. 1201-13 (second ALJ decision); *see also Shawn G. v. Kijakazi*, 2021 WL 3683878, *5 (D. Or. Aug. 19, 2021) ("[b]ecause the ALJ twice improperly discredited [a medical source's] opinion and made the same errors when reevaluating [his] opinion that the Court identified during the Court's review of the ALJ's original decision, the

Court does not believe that giving the ALJ a third opportunity to evaluate [that provider's] testimony will serve a useful purpose"). And plaintiff's date last insured has now lapsed nearly five years ago.

Although the Commissioner contends further proceedings are necessary in light of Dr. Smiley's opinion, plaintiff's "many" office visits "related to impairments other than those she alleges are disabling," her history of conservative treatment, and the objective findings, the Commissioner does not actually cite to any factual discrepancies in the record or evidence that casts serious doubt as to whether plaintiff was disabled as of the alleged onset date. Def.'s Resp. Br. 5 (doc. 21).

Notably, the fact that plaintiff sought treatment for other impairments during the adjudication period is irrelevant. Plaintiff sought regular and consistent care for her allegedly disabling impairments, and tried a number of modalities of treatment, including prescription and over-the-counter medication, right knee surgery, carpal tunnel surgery, physical therapy, water therapy, acupuncture, and injections, but continued to have ongoing symptoms. *See, e.g.*, Tr. 405-12, 427-28, 435-36, 443, 551, 553-54, 560-61, 616, 643-44, 658-59, 684. In this context, "conservative treatment" is not necessarily the inverse of aggressive treatment, and the fact that headaches/migraines and fibromyalgia are not susceptible to invasive or surgical correction does not mean that plaintiff has not been diligent in attempting to mitigate and treat her symptoms. *Cf. Revels v. Berryhill*, 874 F.3d 648, 667 (9th Cir. 2017) ("[a]ny evaluation of the aggressiveness of a treatment regimen must take into account the condition being treated").

The Commissioner asserts broadly that "Dr. Smiley's testimony supported a sedentary residual functional capacity," but otherwise does not address the particularized errors plaintiff has

raised in relation thereto.[5] Def.'s Resp. Br. 5 (doc. 21); *see also Hunt v. Colvin*, 954 F.Supp.2d 1181, 1196 (W.D. Wash. 2013) (construing the Commissioner's failure to respond to an argument as a concession that the claimant's position has merit).

In any event, where, as here, the ME's testimony fails to acknowledge important evidence and/or is inconsistent with the record, the ALJ errs by relying on that testimony. Tr. 1257-70; *Kevin L. K. v. Comm'r of Soc. Sec. Admin.*, 2022 WL 16758208, *3-5 (D. Or. Nov. 8, 2022); *see also Thielen v. Colvin*, 2014 WL 4384027, at *5 (E.D. Wash. Sept. 2, 2014) (examining doctor's "series of odd observations" – including inconsistent opinions surrounding the existence of certain mental health conditions – "reasonably cast doubt on the credibility of his conclusions"). And, perhaps more importantly, a "conflict between medical opinions alone does not render evidence ambiguous." *Freeman v. Colvin*, 669 Fed.Appx. 861, 861 (9th Cir. 2016) (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1148-49 (9th Cir. 2001)).

Finally, an independent review of the medical record reveals myriad objective findings that are supportive of Dr. Lim's opinion and plaintiff's subjective symptom statements. For instance, February 2012 imaging of plaintiff's back showed mild degenerative changes at the L5-S1 level and a small disk bulge at L4-5. Tr. 540, 544. A follow-up study obtained in July 2014 noted an "unchanged" disk bulge and "[m]ild apparent facet degenerative change left L5-Sl level." Tr 1040. *See Dahl v. Comm'r of Soc. Sec. Admin.*, 2015 WL 5772060, *5 (D. Or. Sept. 30, 2015) ("mild degenerative disc disease can have disabling effects") (collecting cases); *see also Ellefson v. Colvin*, 2016 WL 3769359, *6 n.5 (D. Or. July 14, 2016) ("mild degenerative changes do not necessarily equate to mild functional limitations"); *Daley v. Colvin*, 2014 WL 5473797, *9 (D. Or.

---

[5] The only allegation of error the Commissioner specifically addresses is plaintiff's challenge to steps two and three.

Page 7 – OPINION AND ORDER

Oct. 28, 2014) ("degenerative disease, by definition, progressively worsens over time") (citation and internal quotations and brackets omitted).

The record also contains objective imaging of plaintiff's knees and neck. Specifically, an April 2013 MRI of plaintiff's right knee demonstrated soft tissue swelling, "[m]ild joint degenerative changes," and "[s]ubtle apparent sclerosis at the metadiaphysis portion, distal femur." Tr. 282. A February 2015 MRI revealed a worsening of plaintiff's right knee condition. Tr. 995-96. Follow-up imaging from May 2015 showed a "[r]ight knee anterior horn lateral meniscus tear with early degenerative joint disease" that necessitated surgical intervention in August 2015. Tr. 56-061, 874-75.[6] October 2015 imaging of plaintiff's left knee evinced "early degenerative joint disease," "a small undersurface tear of the lateral meniscus with evidence of chondromalacia of the patella as well as the medial femoral condyle," and "a cyst near the insertion site of the posterior cruciate ligament and posterior horn of the medial meniscus region." Tr. 551, 848-49. May 2016 imaging of both knees revealed "[o]steoarthritis . . . right greater than left" and "[m]ild right prepatellar soft tissue swelling." Tr. 1115.

A September 2015 MRI of plaintiff's neck showed "multilevel degenerative changes, most significant at the C5-6 level," where there was "mild central stenosis" and "moderate to severe foraminal narrowing on the right and mild foraminal narrowing on the left." Tr. 783.

Additionally, plaintiff exhibited tenderness in her knee, back, and neck, and/or a limited range of motion, upon examination on multiple occasions. *See, e.g.*, Tr. 438, 451, 461, 469, 518, 551, 554, 681, 1644, 1691, 1813, 2466, 2475.

---

[6] Plaintiff underwent a second right knee surgery shortly after the date last insured as her symptoms continued to worsen. Tr. 2396.

Finally, the record contains a July 2016 nerve conduction study of plaintiff's arms and legs "demonstrat[ing] mild right median nerve entrapment across the wrist," "mild bilateral CS radiculopathy," and "abnormal left peroneal nerve dysfunction." Tr. 1190-93.

Third, if the opinions of Dr. Lim, Dr. Alley, or Mr. Yocum were credited as true, the ALJ would be required to make a finding of disability on remand. In relevant part, in June 2016, Dr. Lim opined that plaintiff's "attention and concentration would be impaired to such a degree that she could not be expected perform even simple work tasks" 10% of a typical workday, and she would be expected "to miss 16 hours (the equivalent of two full workdays) or more a month from even a simple and routine sedentary job because of her impairments." Tr. 1187-89; *see also* Tr. 3628-32 (Dr. Lim reaffirming his June 2016 opinion in July 2021 and indicating the existence of additional impairments – such as fibromyalgia – that existed prior to December 2017). The VE indicated that either of these restrictions would preclude competitive employment. Tr. 1245-46.

Alternatively, Dr. Alley, Dr. Lim, and Mr. Yocum limited plaintiff to occasional handling, fingering, and feeling. Tr. 85-86, 547-48, 1188-89, 3631. The VE testified that a restriction to less than frequent handling and fingering would result in a 50% reduction of the occupational base, and a limitation to occasional handling and fingering would preclude the jobs identified. Tr. 1243-44.

The record, as a whole, does not create serious doubt plaintiff is disabled. As addressed herein, the record shows that plaintiff experienced pain throughout a number of body parts and sought regular and consistent treatment. The Commissioner cites to boilerplate case law indicating that "an automatic award of benefits in a disability benefits case is a rare and prophylactic exception to the well-established ordinary remand rule." Def.'s Resp. Br. 4 (doc. 15). However, remanding the case for the immediate payment of benefits avoids "the 'heads we win; tails, let's

Page 9 – OPINION AND ORDER

play again' scenario that the Ninth Circuit instructs district courts to avoid," which is especially appropriate considering the VE's testimony makes clear that any additional erosion of the occupational base would preclude gainful employment.[7] Tr. 1243-44; *Atticus W. v. Kijakazi*, 2021 WL 5108743, *6 (D. Or. Nov. 3, 2021) (collecting cases); *see also Varela v. Saul*, 827 Fed.Appx. 713, 714 (9th Cir. 2020) (reversing district court and instead providing instructions to "remand to the Commissioner of Social Security for an award of benefits" where "crediting [the treating physician's] opinion as true, there is no doubt that [the claimant] was disabled").

In sum, plaintiff applied for benefits almost 10 years ago, and there are no outstanding issues given the opinions of plaintiff's treating providers, especially when viewed in conjunction with the state agency consulting source opinions and the VE's testimony. As such, the appropriate remedy is to remand this case for the immediate payment of benefits.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is REVERSED, and this case is REMANDED for the immediate payment of benefits as of August 22, 2013.

IT IS SO ORDERED.

DATED this 2nd day of May, 2023.

　　　　　　　　　　　/s/ Jolie A. Russo
　　　　　　　　　　　Jolie A. Russo
　　　　　　　　United States Magistrate Judge

---

[7] Indeed, based on the ALJ's RFC, the VE was unable to identify a significant number of jobs in the national economy. In particular, the VE identified a single representative occupation – i.e., document preparer – which had 16,800 jobs in the national economy. Tr. 1237-40. Although the Ninth Circuit has not created a bright-line rule for what constitutes a significant incidence of jobs, it has yet to endorse a number below 25,000. *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 529 (9th Cir. 2014); *see also Randazzo v. Berryhill*, 725 Fed.Appx. 446, 446 (9th Cir. 2017) (rejecting 10,000 as a significant number).